United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KWESI MUHAMMAD,
Plaintiff,
v.
CRAIG KOENIG, et al.,
Defendants.

Case No. 24-cv-07884-AMO (PR)

**ORDER DENYING PLAINTIFF'S MOTIONS TO COMPEL DISCOVERY AND REQUEST FOR SANCTIONS; AND GRANTING AN EXTENSION OF TIME TO FILE AN OPPOSITION TO SUMMARY JUDGMENT**

Re: Dkt. Nos. 11, 13, 23

## I. INTRODUCTION

Plaintiff Kwesi Muhammad, who is self-represented and currently incarcerated at the Correctional Training Facility ("CTF"), has filed a complaint under 42 U.S.C. § 1983. Dkt. 1. The claims in Muhammad's complaint stem from allegations that Defendant Former CTF Warden Craig Koenig implemented a modified shower program that prevented inmates from maintaining safe distancing and adequate sanitation, and that Defendant Koenig and Defendant CTF Chief Executive Officer for Health Care Bayode Omosaiye failed to distribute available protective respirators during a facility-wide outbreak, in violation of the Eighth Amendment. *See id.* at 3-6. On May 19, 2025, the Court found Muhammad's allegations stated a cognizable Eighth Amendment claim against Defendants Koenig and Omosaiye, who then filed their answer on June 30, 2025. Dkts. 5, 8.

Before the Court is Muhammad's motions to compel further discovery responses from Defendants as well as his request for sanctions. Dkts. 11, 13. Defendants filed oppositions to the motions. Dkts. 15, 19. Muhammad filed replies to their oppositions. Dkts. 18, 20. Also before the Court are Defendants' motion for summary judgment (dkt. 21), and Muhammad's motion for an extension of time to file his opposition to the motion for summary judgment (dkt. 23).

For the reasons set forth below, the motions to compel discovery and request for sanctions are **DENIED**. Muhammad's motion for an extension of time to file is opposition to the pending

United States District Court
Northern District of California

motion for summary judgment is **GRANTED**, and the parties shall abide by the briefing schedule outlined below.

## II. FACTUAL BACKGROUND

On June 22, 2020, Defendant Koenig implemented a modified shower program in response to the COVID-19 pandemic. Dkt. 1 at 3. Muhammad's housing unit, B-Wing, contained three tiers, each with a shower room of four showerheads spaced approximately two feet apart. *Id.* The entire unit housed up to 254 inmates. *Id.* Under the program, inmates showered once every 72 hours, with half of each tier released en masse for a single one-hour period during which all showerheads remained in constant use, leaving no time for disinfection between uses, and preventing inmates from maintaining six feet of distance. *Id.*

On or about August 6, 2020, an inmate in B-Wing tested positive for COVID-19, and Muhammad alleges that the infection rate rose sharply thereafter due to these shower conditions. *Id.* Muhammad tested positive on November 11, 2020, and he alleges that he suffers from long COVID and post-COVID-19 chronic fatigue syndrome. *Id.* He alleges Defendant Koenig was personally involved in the decisions that led to these conditions and failed to take reasonable measures to protect him, in violation of the Eighth Amendment and supervisory liability under section 1983. *Id.* at 4.

Separately, Muhammad alleges that Defendant Koenig and Defendant Omosaiye, CTF's Chief Executive Officer for Health Care, failed to distribute protective equipment during a facility-wide outbreak. *Id.* As of March 4, 2020, both Defendants allegedly understood, per CDC guidance, that COVID-19 was highly contagious and that KN95 respirators offered enhanced protection over cloth masks. *Id.* at 5.

Between August and December 2020, CTF's Central Facility experienced an outbreak in which over 2,000 inmates, including Muhammad, contracted COVID-19, and twelve inmates died by December 30, 2020. *Id.* Although CTF received approximately 400,000 KN95 respirators between August 27 and October 8, 2020, Muhammad alleges Defendant Koenig did not distribute a single respirator to inmates at CTF's Central Facility during that period, and that Defendant Omosaiye, as the policy-making official responsible for coordinating CTF's healthcare delivery

and outbreak response, similarly failed to act. *Id.* Muhammad alleges this failure recklessly exposed him to a serious communicable disease, in violation of the Eighth Amendment. *Id.* at 5-6.

## III. RELEVANT PROCEDURAL BACKGROUND

### A. First Motion to Compel (Dkt. 11)

On June 27, 2025, Muhammad served Defendants with the following discovery requests: First Set of Requests for Production ("RFPs") to Defendant Koenig; First Set of Requests for Admission ("RFAs") to Defendant Koenig; First Set of RFAs to Defendant Omosaiye; and First Set of Interrogatories to Defendant Koenig. Dkt. 15, Zhang Decl. ¶ 3. On July 25, 2025, Defendants served timely responses to Muhammad's First Set of RFAs to Defendant Koenig, First Set of RFAs to Defendant Omosaiye, and First Set of Interrogatories to Defendant Koenig. *Id.* at ¶ 5. Defendants' counsel scheduled a phone call with Muhammad for July 25, 2025 to request a forty-five-day extension of time of the deadline for Defendants to serve Muhammad with responses to his First Set of RFPs. *Id.*. During the scheduled phone call, Muhammad denied Defendants' request, but agreed to a fourteen-day extension of time. *Id.* On August 5, 2025, Defendants received several thousand documents from the CTF litigation coordinator, which were potentially responsive to Muhammad's RFPs. *Id.* at ¶ 6. Because Defendants would not be able to review and identify all the responsive documents by the extension deadline, Defendants scheduled another phone call with Muhammad for August 8, 2025 to request an additional extension of time to serve responses to the quests for production. *Id.* During the scheduled phone call, Muhammad denied the request for a second extension of time because he was dissatisfied with Defendants' responses to his First Set of Interrogatories and RFAs. *Id.* As of August 8, 2025, Defendants had not yet identified any responsive documents to the RFPs nor reviewed them for confidentiality and/or privilege. *Id.* at ¶ 7. Defendants therefore served Muhammad with objections to the RFPs on August 8, 2025, which stated, "Defendant Koenig is in the process of searching for, identifying, and reviewing documents and, as appropriate, will produce on a rolling basis responsive, relevant, non-privileged documents." *Id.* On November 17, 2025, Defendants served Muhammad with Supplemental Responses to Muhammad's First Set of RFPs. *Id.* at ¶ 8.

On August 11, 2025, Muhammad sent Defendants' counsel a letter expressing his dissatisfaction with specific responses to Muhammad's First Set of RFPs to Defendant Koenig, First Set of RFAs to Defendant Koenig, First Set of Requests for Admissions to Defendant Omosaiye, and First Set of Interrogatories to Defendant Koenig. Dkt. 15, Zhang Decl. ¶ 9. Muhammad stated in his letter that he would file a motion to compel if Defendants' counsel did not meet and confer with him within 7 days. *Id.* Defendants' counsel arranged for a phone call with Muhammad to meet and confer about the discovery responses on August 19, 2025. *Id.* at ¶ 10. During the scheduled phone call, Muhammad agreed to grant Defendant Omosaiye fourteen days to supplement his responses to Muhammad's First Set of RFAs. *Id.* Muhammad did not provide Defendants' counsel with any other deadlines during this phone call. *Id.* Muhammad sent Defendants' counsel a letter on August 19, 2025 stating, among other things, that if either Defendant Omosaiye or Defendant Koenig failed to supplement their responses to Muhammad's RFAs and interrogatories, Muhammad would file a motion to compel. *Id.* at ¶ 11.

Defendants' counsel conferred with Defendant Omosaiye and, after further reasonable inquiry, sent Muhammad a letter on August 29, 2025 informing him that due to unexpected technical issues, Defendant Omosaiye would be serving any supplemental discovery responses by Wednesday, September 3, 2025. Dkt. 15, Zhang Decl. ¶ 12. On September 3, 2025, Defendants sent Muhammad a letter informing him that Defendant Omosaiye had conducted a diligent and extensive review of the information and documents in his possession and was unable to identify any additional information which could be used to supplement or modify his Responses to Muhammad's First Set of RFAs. *Id.* The letter also stated that Defendants would supplement their discovery responses if additional information was discovered which required disclosure and supplementation. *Id.*

Muhammad served Defendants with his Second Set of RFAs to Defendant Koenig and Second Set of Interrogatories to Defendant Koenig on August 13, 2025. Dkt. 15, Zhang Decl. ¶ 13. Defendant Koenig timely served Muhammad with his responses to Muhammad's Second Set of RFAs to Defendant Koenig and Responses to Muhammad's Second Set of Interrogatories on September 15, 2025. *Id.* On September 23, 2025, Muhammad sent Defendants' counsel a



United States District Court
Northern District of California

United States District Court
Northern District of California

letter expressing his dissatisfaction with Defendant Koenig's responses to Muhammad's Second Set of RFAs and Second Set of Interrogatories. *Id.* at ¶ 14. Muhammad stated in his letter that he would file a motion to compel if Defendants' counsel did not meet and confer with him within ten days. *Id.* Defendants' counsel scheduled a meet and confer phone call with Muhammad for October 1, 2025. *Id.* at ¶ 15. During the scheduled call, Muhammad expressed that he would give Defendant Koenig fourteen days to serve supplemental responses to Defendant Koenig's responses to Muhammad's Second Set of RFAs and Second Set of Interrogatories. *Id.* On October 2, 2025, Muhammad sent Defendants' counsel a follow-up letter stating that if Defendant Koenig did not provide supplemental responses as requested during the phone call, Muhammad would file a motion to compel. *Id.* After further inquiry, Defendant Koenig served Muhammad with a supplemental response to his First Set of RFAs on October 15, 2025. *Id.* at ¶ 16. Defendants also sent Muhammad a letter on October 15, 2025 informing him that Defendants had made another request for all relevant documentation regarding KN95 respirator distribution to inmates in 2020 from the CTF litigation coordinator, and that the litigation coordinator was unable to identify any memorandums or written directives containing the fit-testing requirement before distribution of KN95 respirators to inmates at CTF in 2020. *Id.* The letter stated that Defendant Koenig would not be supplementing his response to Muhammad's Second Set of Interrogatories, but Defendant Koenig would provide a supplemental response to Defendant Koenig's response to Muhammad's First Set of RFAs. *Id.*

On November 3, 2025, Muhammad moved to compel responses to his First Set of RFPs, First and Second Set of Interrogatories to Defendant Koenig, First and Second Sets of RFAs to Defendant Koenig, and First Set of RFAs to Defendant Omosaiye. Dkt. 11.

**B. Second Motion to Compel (Dkt. 13)**

On September 23, 2025, Muhammad served Defendants' counsel with his Third Set of RFAs and Third Set of Interrogatories to Defendant Koenig. Dkt. 19-1, Zhang Decl. ¶ 3, Ex. A. Defendant Koenig served Muhammad with a timely response to the Third Set of RFAs and Third Set of Interrogatories on October 23, 2025. *Id.* On October 29, 2025, Muhammad sent Defendants' counsel a letter expressing his dissatisfaction with Defendant Koenig's responses,

United States District Court
Northern District of California

and also requesting to meet and confer to discuss these responses at the end of his deposition, which was scheduled for November 6, 2025. *Id.* at ¶ 4, Ex. B. Muhammad's letter stated that if Defendants' counsel did not provide "adequate supplementation" to his responses, Muhammad would file a motion to compel further responses and seek sanctions for Defendant Koenig's alleged obstruction of discovery. *Id.*

On November 6, 2025, Defendants' counsel conducted Muhammad's deposition through videoconference. Dkt. 19-1, Zhang Decl. ¶ 5. After the deposition concluded, and off the record, the parties met and conferred regarding Defendant Koenig's responses to Muhammad's Third Set of RFAs and Third Set of Interrogatories. *Id.* During the meet and confer, Muhammad insisted that if Defendant Koenig had received a phone call from California Department of Corrections and Rehabilitation ("CDCR") Headquarters instructing him not to distribute KN95 respirators to inmates due to concerns about fit-testing, there should be a written memorandum to support it. *Id.* Muhammad demanded that Defendant Koenig serve a supplemental response to Interrogatory No. 15 within ten days which included production of written memorandums showing that Defendant Koenig received a phone call from CDCR Headquarters instructing him not to distribute KN95 respirators to inmates at CTF. *Id.* There is nothing in the record showing that Muhammad served a separate RFP requesting these documents. *Id.* On November 6, 2025, Muhammad served Defendants' counsel with a letter stating that if Defendant Koenig did not supplement his responses to Muhammad's Third Set of Interrogatories within ten days, Muhammad would file a motion to compel further discovery responses. *Id.* ¶ 6, Ex. C.

On November 6, 2025, Defendants' counsel contacted the California Correctional Health Care Services ("CCHCS") Litigation Support Section requesting any available memorandums sent from CCHCS to CTF between June-July 2020 containing instructions regarding distribution of KN95 respirators to inmates during that time frame. Dkt. 19-1, Zhang Decl. ¶ 6, Ex. C. The CCHCS Litigation Support staff was unable to identify any memorandums responsive to this request. Dkt. 19-3, Henderson Decl. ¶ 4. On November 17, 2025, Defendants sent Muhammad a letter stating that they conducted a reasonable search of available documentation and were unable to locate written documentation showing that Defendant Koenig received a phone call from

United States District Court
Northern District of California

CDCR Headquarters in June or July 2020 instructing him not to distribute KN95 masks to inmates. Dkt. 19-1, Zhang Decl. ¶ 8, Ex. D. The letter also stated that Defendant Koenig provided his responses based on information that was reasonably available to him, and signed his responses to Muhammad's interrogatories under belief that all responses were true and correct of his own knowledge, on the basis of information available to him, and upon belief that all responses based on such information were true. *Id.*

On November 28, 2025, Muhammad moved to compel further responses to his Third Set of Interrogatories to Defendant Koenig. Dkt. 13.

## IV. DISCUSSION

In his first motion to compel, Muhammad moves to compel Defendants Koenig and Omosaiye to provide full and verified responses to his First and Second Sets of RFAs, Interrogatories, and First Set of RFPs of Documents, and he seeks an order deeming certain matters admitted under Rule 36(a)(6) and imposing sanctions under Rule 37(a)(5). Dkt. 11 at 1. Muhammad contends that Defendants have engaged in a pattern of evasive, boilerplate, and contradictory responses concerning the issuance of KN95 masks and enforcement of COVID-19 safety directives at CTF, despite two meet-and-confer sessions and multiple extensions granted in good faith. *Id.* at 2. He asserts that Defendant Koenig's October 15, 2025 Supplemental Response admitting for the first time that he received a CDCR memorandum regarding KN95 mask use dated August 5, 2020 directly contradicts his earlier denial and demonstrates that his prior responses were incomplete and misleading. *Id.* Muhammad further asserts that Defendant Omosaiye has not supplemented his responses at all, despite similarly objecting to straightforward factual inquiries as improper requests for "medical opinion." *Id.* Muhammad identifies several categories of alleged deficiencies, including Defendant Koenig's failure to produce any documents responsive to Muhammad's First Set of RFPs, both Defendants' repeated invocation of "lack of personal knowledge" to RFAs despite their access to CDCR records, improper characterization of factual questions as calling for expert medical opinion, unexplained ambiguity objections, and an "object but respond" format that leaves ambiguous whether individual requests are admitted or denied. *Id.* at 4-7. Muhammad also points to what he characterizes as internally

United States District Court
Northern District of California

inconsistent responses by Defendant Koenig regarding receipt of the KN95 mask memorandum as evidence of bad faith. *Id.* at 7. Muhammad requests that the Court order Defendant Koenig to produce all documents responsive to his RFPs and serve a privilege log, to compel verified further responses to the Interrogatories and RFAs, and to deem admitted those RFAs for which Defendants failed to provide a proper denial. *Id.* at 10.

In his second motion to compel, Muhammad seeks to compel Defendant Koenig to provide full, complete, non-evasive, and properly supplemented responses to Interrogatory No. 15 of Muhammad's Third Set of Interrogatories, pursuant to Federal Rules of Civil Procedure 26, 33, and 37. Dkt. 13 at 1. Muhammad contends that Defendant Koenig's response stating that he is unable to recall the name or job title of the CDCR Headquarters official who allegedly telephoned him in June or July 2020 and instructed him not to distribute KN95 respirators to inmates is not credible and contradicted by Defendant Koenig's own prior discovery responses. *Id.* at 1-2. Specifically, Muhammad points to the following responses: Defendant Koenig's explanation in Interrogatory No. 8 (Set One) that he withheld KN95 masks based on purported fit-testing requirements; Defendant Koenig's admission in RFA No. 6 (Set Two) that neither CDCR policy nor Cal/OSHA regulation actually required KN95 fit-testing during the relevant period; Defendant Koenig's detailed account in Interrogatory No. 12 (Set Two) describing the alleged oral directive; and CDCR's November 20, 2025 Public Records Act response confirming that CDCR has no record of any written directive supporting Defendant Koenig's account. *Id.* at 2. Muhammad argues that these inconsistencies establish that Defendant Koenig's "unable to recall" response was made without a reasonable inquiry, in violation of Rules 26(g), 33(b), and 37(a)(4), and that Defendant Koenig cannot avoid responding by invoking selective memory given that the caller's identity is the only potential evidence supporting the alleged directive's existence. *Id.* at 2-4. Muhammad's requests that the Court compel Defendant Koenig to serve full, non-evasive supplemental responses identifying the official or stating under oath that no such call occurred, to conduct a reasonable inquiry under Rule 26(g), and to supplement any prior interrogatory responses that rely on the alleged phone directive. *Id.* at 4-5.

Meanwhile, Defendants oppose Muhammad's first motion to compel on the grounds that

United States District Court
Northern District of California

Defendants objected appropriately and responded fully to the requested RFAs and interrogatories. Dkt. 15 at 4. Also, they contend Muhammad's motion to compel further responses to his requests for production is moot because Defendants have served him with all responsive documents. *Id.* Similarly, Defendants oppose Muhammad's second motion to compel on the ground that Defendant Koenig objected appropriately and responded fully to Muhammad's third set of interrogatories. *See* Dkt. 19 at 1-2. Further, Defendants that Muhammad's assertion that Defendant Koenig is intentionally withholding responsive information is speculative and inaccurate, and that Defendant Koenig was in fact unable to recall the requested information after conducting a reasonable inquiry, including reviewing all documents provided to refresh his recollection by the CTF litigation coordinator concerning the distribution of KN95 respirators at CTF in 2020, and requesting that CDCR Headquarters conduct an electronic search for the requested information. *Id.*

In support of Defendants' opposition to Muhammad's motions to compel, Defendants have presented declarations from Defendant Koenig (Dkt. 15 at 83-94; Dkt. 19-2 at 1-3), Defendant Omosaiye (Dkt. 15 at 85-86), and their attorney, Deputy Attorney General Victoria Zhang (Dkt. 15 at 29-33; Dkt. 19-1 at 1-15), along with various supporting exhibits (Dkt. 19-1, Exs. A-D). Defendants have also submitted declarations from Staff Services Manager G. Henderson (Dkts. 19-3 at 1-3) and Correctional Counselor II, Litigation Coordinator M. Barss (Dkt. 15 at 87-89; Dkt. 19-4 at 1-2).[1]

### A. Legal Standard

The Federal Rules of Civil Procedure allow liberal discovery. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34, (1984). The party resisting discovery has the burden of establishing

[1] The record contains multiple declarations from Attorney Zhang, Litigation Coordinator Barss, and Defendant Koenig within each of Defendants' oppositions. *See* Dkts. 15, 19. For ease of reference, the Court cites to the declarations filed in support of their opposition to the first motion to compel as follows: "Dkt. 15, Zhang Decl." (Dkt. 15 at 29-33); "Dkt. 15, Barss Decl." (Dkt. 15 at 87-89); and "Dkt. 15, Koenig Decl." (Dkt. 15 at 83-94). The opposition to the second motion to compel includes updated declarations from the same three declarants, with Attorney Zhang's declaration further supported by four attached exhibits, labeled A through D. Citations to those declarations and exhibits appear as "Dkt. 19-1, Zhang Decl." (Dkt. 19-1 at 1-3) and "Dkt. 19-1, Zhang Decl., Ex. A-D" (Dkt. 19-1 at 4-14), "Dkt. 19-4, Barss Decl." (Dkt. 19-4 at 1-2), and "Dkt. 19-2, Koenig Decl." (Dkt. 19-2 at 1-3), respectively.

lack of relevance or undue burden. *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 565 (D. Kan. 1997). The resisting party must demonstrate that the documents sought are not relevant under the broad scope of relevance provided by Rule 26(b)(1), or that the documents are "of such marginal relevance that the potential harm occasioned by disclosure would outweigh the ordinary presumption in favor of broad disclosure . . . ." *Burke v. New York City Police Dep't.*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987). A recitation that the discovery request is "overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a successful objection. *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982). The party resisting discovery must instead "show specifically how . . . each interrogatory [or RFP] is not relevant or how each question is overly broad, burdensome or oppressive." *Id.* (omission in original).

Generally, if the responding party objects to a discovery request, the party moving to compel bears the burden of demonstrating why the objections are not justified. *See*, *e.g.*, *Grabek v. Dickinson*, No. CIV S-10-2892 GGH P, 2012 WL 113799, at *1 (E.D. Cal. Jan. 13, 2012); *Mitchell v. Felker*, No. CV 08-119 RAJ, 2010 WL 3835765, at *2 (E.D. Cal. Sept. 29, 2010). This requires the moving party to inform the court which discovery requests are the subject of the motion to compel, and, for each disputed response, why the information sought is relevant and why the responding party's objections are not meritorious.

Relatedly, courts in this circuit have long disfavored generalized, boilerplate objections that fail to specify how a particular request is deficient or how the responding party would be prejudiced by compliance. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (discussing the inadequacy of undifferentiated, boilerplate discovery objections); *Bess v. Cate*, 422 F. App'x 569, 572 (9th Cir. 2011) (noting it is "well-established law that parties seeking to invoke privileges are not permitted to provide mere blanket objections to discovery requests"). A party who objects to an RFP must, in addition to stating the grounds for the objection with specificity, state whether any responsive materials are being withheld based on that objection. *See* Fed. R. Civ. P. 34(b)(2)(B)-(C); *see also Fischer v. Forrest*, No. 14-CV-1304, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) (striking boilerplate objections and ordering compliance with Rule 34(b)(2)(C)'s specificity requirement).

Interrogatory answers are subject to a similar standard. A party must furnish such information as is available to it, Fed. R. Civ. P. 33(b)(1)(B), and a responding party cannot answer "I do not know" or "I do not recall" without first making a reasonable inquiry into information reasonably available to it, including records within its access or control.

RFAs are governed by a comparable rule: an answering party may assert lack of knowledge or information as a basis for failing to admit or deny a matter only if it states that it has made reasonable inquiry and that the information known or readily obtainable is insufficient to enable it to admit or deny. Fed. R. Civ. P. 36(a)(4). The Ninth Circuit has held that a response asserting lack of knowledge does not comply with Rule 36(a) unless the responding party has, in fact, made a reasonable inquiry and unless the information readily obtainable was truly insufficient to admit or deny the matter; a party must make a reasonable effort to secure information within its relative control, such as records held by an affiliated agency, before disclaiming knowledge. *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245-47 (9th Cir. 1981). A denial, moreover, must fairly meet the substance of the request, and an evasive or incomplete answer may be treated as a failure to respond. *See* Fed. R. Civ. P. 37(a)(4); *see also Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (finding that evasive or misleading denials may be treated as a failure to answer under the Rules of Civil Procedure). Where an answer or objection does not comply with Rule 36, the court may order that the matter is admitted or that an amended answer be served, and the binding effect of such deemed admissions is well established. *See* Fed. R. Civ. P. 36(a)(6); *see also Conlon v. United States*, 474 F.3d 616, 621-22 (9th Cir. 2007).

Before filing a motion to compel, the moving party must first attempt to resolve the dispute informally with the opposing party. It is only when the parties are unable to resolve the dispute after making a good faith effort to do so that they should seek the court's intervention. *See* Fed. R. Civ. P. 37(a)(2)(B); N.D. Cal. Local Rule 37-1. Here, because Muhammad is incarcerated, he is not required to meet and confer with Defendants in person. Rather, if Defendants deny Muhammad's discovery requests and if he intends to pursue a motion to compel, he need only send a letter to Defendants to that effect, offering Defendants one last opportunity to

United States District Court
Northern District of California

provide him the sought-after information. The letter should state the specific discovery he seeks and the reasons that he believes he is entitled to such discovery.

According to Northern District Local Rule 37-2, a motion to compel further responses to discovery requests must set forth each request in full, followed immediately by the objections and/or responses thereto. *See* L.R. 37-2. For each such request, the moving papers must detail the basis for the party's contention that it is entitled to the requested discovery and must show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied. *Id.*

**B. Analysis**

The Court considers the parties' discovery disputes below.

**1. Discovery Requests' Failure to Comply With Local Rule 37-2**

Defendants first argue in their oppositions that Muhammad has not reproduced any of the RFPs, interrogatories, RFAs, or relevant responses for which Muhammad filed his motions to compel discovery. *See* Dkt. 15 at 8 (citing Dkt. 11 at 1-9); Dkt. 19 at 4 (citing Dkt. 13 at 1-5). Instead, Defendants argue that Muhammad only refers to the discovery requests by their number and general subject matter, and by limited excerpts from Defendants' responses, which is insufficient to comply with Local Rule 37-2. *Id.* The Court agrees. The Court further notes that attaching the entirety of Defendants' responses as exhibits, without more, is insufficient to comply with the local rule. *See* Dkt. 11 at 34-91; Dkt. 13 at 32-33. Furthermore, Muhammad fails to explain how each of Defendants' discovery responses for which he seeks to compel further responses are specifically and individually insufficient. *See* Dkts. 11, 13. For example, in his first motion to compel, Muhammad groups them together by their alleged deficiencies using broad and general terms, such as "these responses fail to provide the information which is 'available to the party.'" *See* Dkt. 11 at 5.

Failure to comply with these basic requirements is basis alone for denying the motions to compel. Nonetheless, in the interest of providing guidance to the parties and forestalling future discovery disputes, the Court proceeds to consider the merits of Muhammad's motions to compel responses to his discovery requests and sanctions.

United States District Court
Northern District of California

**2. Motion to Compel Further Responses to First Set of RFPs on the Grounds of Non-Responsiveness**

As regards to Muhammad's first motion to compel further responses to his First Set of RFPs, the record shows that Defendant Koenig served Muhammad with supplemental responses to the RFPs and attached all identified documents responsive to the request on November 17, 2025. *See* Dkt. 15, Zhang Decl. ¶ 8. Further, Defendants note that no responsive documents were withheld on the basis of confidentiality or privilege. *Id.* The record shows that all documents identified by Defendants as responsive to Muhammad's RFPs were produced after a reasonable search. *Id.*, *see also* Dkt. 15, Barss Decl. ¶ 3. "A party . . . who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Thus, the Court finds that Muhammad's first motion to compel further responses to his First Set of RFPs on the grounds of non-responsiveness is **DENIED** as moot.

**3. Motion to Compel Responses to Interrogatories to Defendant Koenig**

**a. Interrogatories Nos. 1, 2, and 3**

In his first motion to compel, Muhammad also moves for further responses as to the First And Second Set of Interrogatories to Defendant Koenig, *see* Dkt. 11 at 1, and for further responses to the Third Set of Interrogatories to Defendant Koenig, *see* Dkt. 13 at 1. Defendants argue that Defendant Koenig answered all interrogatories based on all information that was reasonably available to him. Dkt. 15 at 9-15; Dkt. 19 at 4-7. They note that Muhammad also fails to articulate how each of Defendant Koenig's responses are specifically deficient, and press that Muhammad assertions that Defendant Koenig possessed additional information are conclusory and speculative. *Id.*

A responding party does not have to conduct extensive research to answer an interrogatory, but a reasonable effort to respond must be made. *See Gorrell v. Sneath*, 292 F.R.D. 629, 629 (E. D. Cal. Apr. 5, 2013). The responding party must make "a reasonable effort to

United States District Court
Northern District of California

secure information that is readily obtainable from persons and documents within the responding party's relative control." *Asea, Inc.*, 669 F.2d at 1245 (holding that Rule 36 "requires the responding party to make a reasonable inquiry, a reasonable effort, to secure information that is readily obtainable from persons and documents within the responding party's relative control and to state fully those efforts").

Defendants claim that Defendant Koenig is a retired CTF warden and no longer has access to CTF resources to answer certain questions, such as identifying the average number of inmates housed in B-wing at the specified time frames. *See* Dkt. 15 at 10; Dkt. 15, Koenig Decl. ¶ 2, 4; Dkt. 19-2, Koenig Decl. ¶ 2. The record shows that with the assistance of the CTF litigation coordinator, Defendants made a reasonable inquiry and learned that CTF did not keep a working list of the average number of inmates housed in B-wing at any given time. *See* Dkt. 15 at 10-11; Dkt. 15, Barss Decl. ¶ 5. Thus, the Court finds Defendant Koenig's responses of "I do not know" were properly based on the information reasonably available to him. Thus, Muhammad's request to compel supplemental answers to Interrogatories Nos. 1, 2, and 3 is **DENIED.**

**b. Interrogatories Nos. 4, 5, and 6**

Defendants argue that Muhammad fails to meaningfully explain why Defendant Koenig's responses to Interrogatory Nos. 4, 5, and 6 were deficient. Dkt. 15 at 8 (citing Dkt. 11 at 5). Muhammad does not support his allegations that the information requested was "available to the party," *see* Dkt. 11 at 5, and that Defendant Koenig "refused to review them," *see id.*, and thus, the Court finds such allegations unfounded. The record shows that Defendant Koenig requested assistance acquiring responsive information from the CTF litigation coordinator. *See* Dkt. 15, Barss Decl. ¶ 2. After a reasonable search, the CTF litigation coordinator could not identify any policies at CTF regulating the manner in which inmates were released for showers, the number of inmates permitted to occupy a communal shower, or the amount of time inmates had to take a shower in B-wing between October 29, 2020 and November 11, 2020. *Id.* at ¶ 4. Therefore, Defendant Koenig's responses of "I do not know" to Interrogatory Nos. 4, 5, and 6 were properly based on the information reasonably available to him. Thus, Muhammad's request to compel an answer to these interrogatories is **DENIED.**

**c. Interrogatory No. 7**

As regards to Interrogatory No. 7, Defendants argue that Defendant Koenig did not personally keep track of the number of inmates housed in B-Wing that tested positive for COVID-19 during the time frame requested. Dkt. 15 at 12; Dkt. 15, Koenig Decl. ¶ 4. The record shows that after a reasonable inquiry through the CTF litigation coordinator, Defendant Koenig determined that CTF did not keep a working list of how many inmates in each housing unit tested positive for COVID-19 at a given time. *See* Dkt. 15, Barss Decl. ¶ 6. Again, Muhammad fails to support his allegation that such information was "available to the party," *see* Dkt. 11 at 5, thus his assertion is speculative. Because Defendant Koenig's response of "I do not know" was proper based on the information reasonably available to him, Muhammad's request to compel an answer to this interrogatory is **DENIED.**

**d. Interrogatory Nos. 9 and 10**

Defendants argue that Muhammad fails to meaningfully explain why Defendant Koenig's responses to Interrogatory Nos. 9 and 10 were deficient or how the requested information was readily obtainable as alleged. Dkt. 15 at 13 (citing Dkt. 11 at 5-6, 9). The record shows that after a reasonable inquiry through the litigation coordinator, Defendant Koenig was unable to verify that two shower heads in G-wing were removed before November 2020, or that two shower heads in B-wing were required to be removed in 2020. *See* Dkt. 15, Barss Decl. ¶ 6.[2] The Court finds that Defendant Koenig answered Muhammad's interrogatories to the best of his ability and any request for further responses to these interrogatories is **DENIED** because Defendant Koenig's responses of "I do not know" to Interrogatory Nos. 9 and 10 were proper based on the information reasonably available to him.

**e. Interrogatory Nos. 11, 12, and 13**

Defendants argue that Muhammad also fails to meaningfully explain why Defendant

[2] Litigation Coordinator Barss' declaration contains a duplicate paragraph numbering error, listing two separate paragraphs as "¶ 6." Unless otherwise noted, citations to Barss Decl. ¶ 6 in this paragraph refer to the second paragraph so numbered, which states that Barss was unable to verify, after requesting assistance from CTF's operations department for any relevant work orders, that two shower heads in G-wing were removed before November 2020, or that two shower heads in B-wing were required to be removed in 2020.

Koenig's responses to Interrogatory Nos. 11, 12, and 13 were deficient. Dkt. 15 at 13-15 (Dkt. 11 at 5-6, 9). Muhammad again asserts that the information requested was "available to the party," and that Defendant Koenig "refused to review" the discovery requests. *See* Dkt. 11 at 5. . However, the record shows that, after a reasonable inquiry, Defendant Koenig was unable to locate any written documents requiring KN95 respirators to be fit-tested prior to distribution to inmates or CDCR policy classifying KN95 respirators as "tight-fitting respirators." *See* Dkt. 15, Barss Decl. ¶ 7. Therefore, Defendant Koenig's responses to Interrogatory Nos. 11 and 13 were based on the information reasonably available to him. Further, Defendant Koenig responded fully to Interrogatory No. 12, and a motion to compel further responses would be futile. Thus, Muhammad's request to compel an answer to these interrogatories is **DENIED.**

**f. Interrogatory No. 15**

In his second motion to compel, Muhammad argues that Defendant Koenig is intentionally refusing to disclose responsive information to Interrogatory No. 15. Dkt. 13 at 1-2. Defendants argue that Muhammad's claim as to this interrogatory is speculative and inaccurate. Dkt. 19 at 5. They point out that Defendant Koenig provided a response to Interrogatory No. 15 based on his recollection and after reviewing all available relevant documentation. *Id.* The record shows that, based on his personal recollection, Defendant Koenig was unable to recall the name or job title of the person at CDCR Headquarters who instructed him in June or July 2020 not to distribute KN95 masks to inmates at CTF. *See* Dkt. 19-2, Koenig Decl. ¶ 4. Defendant Koenig was also unable to recall the specific date this phone call occurred based on his personal recollection. *Id.* Also, the record shows that Defendants were unable to identify any written documentation containing the requested information after enlisting the assistance of the CTF litigation coordinator, who conducted a reasonable search for all documents discussing distribution of KN95 respirators at CTF in 2020. *See* Dkt. 19-4, Barss Decl. ¶ 4. None of the documents located by the CTF litigation coordinator included information on the name or job title of a person who instructed Defendant Koenig by phone in June or July 2020 not to distribute KN95 masks to inmates at CTF, or the specific date of this phone call. *Id.* Thus, the record confirms that after reviewing all available relevant documentation regarding distribution of KN95 masks at CTF in 2020 provided

by the CTF litigation coordinator with Defendants' counsel, Defendant Koenig was still unable to recall specifically who at CDCR Headquarters made a phone call to him in June or July 2020 instructing him not to issue KN95 masks to inmates, or the specific date this call took place. *See* Dkt. 19-2, Koenig Decl. ¶ 4.

In addition, the record shows that Defendants sent a request to the CCHCS Health Care Litigation Support Section for assistance providing the requested information. *See* Dkt. 19-2, Zhang Decl. ¶ 7. After reviewing CCHCS's electronic historical COVID-19 related guidance and eDiscovery system, CCHCS Health Care Litigation Support staff was unable to identify any written documentation containing the name or job title of a person from CDCR Headquarters who made the phone call to Defendant Koenig in June or July 2020 instructing him not to distribute KN95 masks to inmates, or any documents discussing the contents of this phone call. *See* Henderson Decl. ¶ 3-4. Accordingly, Defendant Koenig's response and objections were therefore made following a reasonable inquiry, and the Court **DENIES** Muhammad's request for further responses to Interrogatory No. 15 as it would be futile.[3]

**4. Motion to Compel Further Responses to RFAs**

Muhammad alleges Defendants failed to describe any attempt to review departmental records or confer with CTF staff before serving responses to Muhammad's RFAs, which renders their responses inadequate. Dkt. 11 at 5-6. Defendants argue that Muhammad does not include any supporting evidence demonstrating that Defendants failed to review departmental records or confer with CTF staff before serving responses to Muhammad's RFAs. Dkt. 15 at 15. Also, Defendants claim they are not required to include in their responses what methods they conducted

[3] Defendants also argue that Muhammad's second motion to compel is also "entirely improper to the extent Muhammad is attempting to compel the production of documents in response to an interrogatory." Dkt. 19 at 7. Defendants claim that they "went above and beyond their obligations during the meet and confer process to search for documents containing the information, but were under no obligation to do so." *Id.* Federal Rule of Civil Procedure 33 permits a responding party to produce documents in response to an interrogatory, but it does not require the party to produce records supporting its written response. Fed. R. Civ. P. 33(d); *Garcia v. Mix*, No. 1:10-CV-02097-BAM PC, 2014 WL 5454189, at *8 (E.D. Cal. Oct. 27, 2014). Here, the record shows that Muhammad failed to serve a separate RFP requesting documents related to Interrogatory No. 15. *See* Dkt. 19, Zhang Decl. ¶ 5. Thus, to the extent that Muhammad's second motion to compel seeks to compel the production of documents in response to Interrogatory No. 15, such a request is **DENIED**.

United States District Court
Northern District of California

to respond to the RFAs, as Muhammad claims. *See id.* at 15-16 (citing Fed. R. Civ. P. 36(a)(4)). Instead, Defendants point out that "the answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." *Id.* The Court addresses each of Muhammad's requests for further responses to certain RFAs in turn.

**a. Defendant Omosaiye's Responses to RFAs 10 Through 14**

As regards to RFAs 10, 12, and 14, Muhammad asked Defendant Omosaiye to admit that the referenced documents were each a "true and correct copy of the original." The record shows that because it was unclear what Muhammad meant by "true and correct copy of the original," Defendant Omosaiye was unable to admit or deny each of these requests. Moreover, because Defendant Omosaiye did not author any of the referenced documents, Defendant Omosaiye could not determine if these were "true and correct" copies of the referenced documents. After Defendant Omosaiye reviewed his email inbox, personal notes, and saved documents on his work computer, he could not determine if he had previously received the documents referenced in RFAs 11 and 13. *See* Dkt. 15, Omosaiye Decl. ¶ 2.[4] Therefore, Defendant Omosaiye's responses to RFAs 11 through 14 were made under reasonable inquiry and proper, and Muhammad's request for further responses to these RFAs is **DENIED**.

**b. Defendant Omosaiye's Responses to RFA Nos. 17, 18, 22, and 23**

Defendant Omosaiye's objected to RFA Nos. 17, 18, 22, and 23 on the basis that they called for a medical expert opinion, and because Defendant Omosaiye is not an epidemiologist, he is not capable of opining on constitutes an infectious diseases outbreak or determining whether a KN95 respirator filters COVID-19 respiratory droplets better than a cloth face covering. *See* Dkt.

---

[4] Defendant Omosaiye's declaration contains a duplicate paragraph numbering error, listing two separate paragraphs as "¶ 2." Unless otherwise noted, citations to "Omosaiye Decl. ¶ 2" in this Order refer to the second paragraph so numbered, in which Defendant Omosaiye states that after reviewing his email inbox, personal notes, and saved documents on his work computer, he could not determine whether he had previously received the documents referenced in Muhammad's RFA Nos. No. 11 and 13—specifically, the "COVID-19 Surge Mitigation and Management Plan" and the memorandum "Use of KN95 Masks as Facial Barrier Only," dated August 5, 2020.

United States District Court
Northern District of California

15, Omosaiye Decl. ¶ 5. Defendants further argue there is no support to Muhammad's argument that the information needed to respond to these RFAs is within the CDCR's possession. *See id.* Finally, Defendants point out the mere fact that Defendant Omosaiye has access to Muhammad's medical record "does not support Muhammad's contention that Defendant Omosaiye has access to the information needed to respond to [RFA Nos.] 17, 18, 22, and 23." *Id.* The Court agrees with Defendants and finds Defendant Omosaiye's responses and objections were made following a reasonable inquiry and legally sufficient. The Court therefore **DENIES** Muhammad's motion to compel further responses to RFA Nos. 17, 18, 22, and 23.

**c. Defendant Omosaiye's Responses to RFA Nos. 20 and 21**

Defendants argue that Muhammad fails to meaningfully explain why Defendant Omosaiye's responses to RFA Nos. 20 and 21 were deficient. *See* Dkt. 15 at 19 (citing Dkt. 11 at 5-6). In RFA Nos. 20 and 21, Muhammad requested Defendants to admit that he was diagnosed with chronic fatigue syndrome by his primary care provider ("PCP") on July 6, 2022 (RFA No. 20), and to admit that he was diagnosed with Post-acute sequelae of COVID-19 by his PCP on February 28, 2023 (FRA No. 21). In response, Defendants noted that the requested information is equally available to both parties, and they admitted to both RFA Nos. 20 and 21. Therefore, Defendants provided a complete response to RFA Nos. 20 and 21. A motion to compel is an improper vehicle for challenging objections to a discovery request where the responding party has provided a complete response. *See* Fed. R. Civ. P. 37(a)(3)(B). Thus, Muhammad's request for further responses to RFA Nos. 20 and 21 is **DENIED.**

**d. Defendant Omosaiye's Responses to RFA Nos. 24 and 26**

Defendants argue that Defendant Omosaiye's responses to RFA Nos. 24 and 26 were proper. Dkt. 15 at 20. The record shows that after Defendant Omosaiye spent multiple days reviewing his personal notes and archived documents, he was unable to confirm or disprove that: (1) between October 29, 2020 and November 11, 2020, no KN95 respirators were distributed to inmates housed in B-Wing' or (2) that between October 29, 2020 and November 11, 2020, KN95 respirators were distributed to staff at CTF due to smoke caused by local wildfires. *See* Dkt. 15, Omosaiye Decl. ¶ 3; Dkt. 15, Barss Decl. ¶ 8. The Court finds Defendant Omosaiye sufficiently

not reviewed readily available responsive documents or requested readily available responsive information from CTF staff, and thus **DENIES** Muhammad's motion to compel further responses to RFA Nos. 24 and 26 from Defendant Omosaiye.

**e. Defendant Koenig's Responses to RFA Nos. 7 and 10**

Muhammad seeks supplemental responses from Defendant Koenig arguing that they had access to information "via CDCR records" to provide alternative responses to RFA Nos. 7 and 10. Muhammad further argues that Defendant Koenig's supplemental response to RFA No. 10 shows that his original response was false and evasive. The record shows that Defendant Koenig conducted a reasonable inquiry of readily available information and responded accordingly. *See* Dkt. 15, Koenig Decl. ¶ 2-3. Further, a defendant is required to supplement their discovery responses should they learn that their responses were incomplete or incorrect. *See* Fed. R. Civ. P. 26(e)(1)(A). Defendant's compliance with this obligation does not imply that anything was wrong with the original answer. Because Defendant Koenig has provided full responses to RFA Nos. 7 and 10, the Court **DENIES** Muhammad's motion to compel further responses as to these RFAs because they would be redundant.

**f. Defendant Koenig's Responses to RFA No. 11**

Defendants argue that because it was unclear what Muhammad meant by true and correct copy, Defendant Koenig was unable to admit or deny RFA No. 11. Dkt. 15 at 22. Moreover, they claim that because Defendant Koenig did not author the referenced document, Defendant Koenig could not determine if it was a true and correct copy. *Id.* The Court finds that Defendant Koenig responded fully after a reasonable inquiry, and it **DENIES** Muhammad's motion to compel further responses to this RFA because it would be futile.

**g. Defendant Koenig's Responses to RFA Nos. 14 and 15**

Defendants argue that Defendant Koenig's objection that RFA Nos. 14 and 15 called for a medical expert opinion were proper because Defendant Koenig was a warden at CTF, not an epidemiologist, and is not aware of the technical definition of an "outbreak." *See* Dkt. 15 at 23; Dkt. 15, Koenig Decl. ¶ 5. Instead, Defendants point out that Defendant Koenig admitted that he was aware that there were other COVID-19 cases at CTF. *Id.* Thus, they argue that

United States District Court
Northern District of California

Muhammad's argument that the information needed to respond to these RFAs is "within CDCR's possession, not expert speculation" is unfounded. *Id.* The Court agrees. Therefore, Defendant Koenig's responses and objections were made following a reasonable inquiry and legally sufficient, and thus Muhammad's request for further responses to these RFAs is **DENIED.**

**h. Defendant Koenig's Responses to RFA Nos. 21, 23, and 24**

Defendants argue that Defendant Koenig responded fully to RFA Nos. 21, 23, and 24 after a reasonable inquiry. Dkt. 15 at 24 (citing Dkt. 15, Koenig Decl. at ¶ 3; Dkt. 15, Barss Decl. ¶ 8). They further claim that Muhammad's argument that Defendant Koenig "had access to the information being requested via CDCR records" is pure speculation and unfounded. *Id.* With respect to RFA Nos. 23 and 24, Defendants argue that Defendant Koenig was unable to determine if there even was a decision to distribute KN95 respirators to staff during the time period referenced. *See id.* (Dkt. 15, Barss Decl. ¶ 8). The Court finds that Muhammad failed to articulate how Defendant Koenig's responses are deficient, and instead merely disagrees with Defendant Koenig's responses, which is insufficient to support a motion to compel. *See Asea, Inc.*, 669 F.2d at 1245 (holding disagreement with defendant's response to RFA is insufficient grounds to pursue a motion to compel). As such, Muhammad's motion to compel further responses to RFA Nos. 21, 23, and 24 is **DENIED**.

**i. Defendant Koenig's Responses to RFA Nos. 27, 29, 31, 32, 33 and 37**

Defendant Koenig responded fully to RFA Nos. 27, 29, 31, 32, 33, and 37 after a reasonable inquiry through the CTF litigation coordinator. *See* Dkt. 15, Barss Decl. ¶ 9. Muhammad fails to support his argument that Defendant Koenig had access to the information being requested via CDCR records, especially since Defendant Koenig is the former CTF ward, has retired, and no longer has access to CTF facilities. Because Muhammad fails to articulate how Defendant Koenig's responses to RFA Nos. 27, 29, 31, 32, 33, and 37 are evasive or insufficient as alleged, the Court **DENIES** his request for further responses to these RFAs.

**j. Defendant Koenig's Responses to RFA Nos. 39, 40 and 41**

United States District Court
Northern District of California

The record shows that Defendant Koenig did not retain control of any of the documents referenced here after his retirement, if he received them at all. *See* Koenig Decl. ¶ 2. Thus, Defendant Koenig responded fully to RFA Nos. 39, 40 and 41 after a reasonable inquiry. Again, Muhammad fails to support his argument that Defendant Koenig had access to the information being requested via CDCR records. Therefore, the Court **DENIES** Muhammad's request for further responses to RFA Nos. 39, 40 and 41 because he fails to articulate how Defendant Koenig's responses are deficient and instead Muhammad seems to express his disagreement with Defendant Koenig's responses, which is insufficient to support his motion to compel. *See Asea, Inc.*, 669 F.2d at 1245.

#### k. Defendant Koenig's Responses to RFA No. 43

Muhammad fails to articulate how Defendant Koenig's response to RFA No. 43 is deficient. Defendant Koenig fully responded to this RFA and objected appropriately based on the vagueness of the request, and thus the Court **DENIES** Muhammad's request for further responses to RFA No. 43.

#### l. Defendant Koenig's Responses to Muhammad's Second Set of RFAs (RFAs Nos. 1, 2, and 4)

The record shows that Defendant Koenig responded fully to RFAs Nos. 1, 2, and 4 (Second Set) after a reasonable inquiry. *See* Dkt. 7, Barss Decl. ¶ 7. The Court finds that Muhammad only speculates and does not no support to his argument that Defendant Koenig had access to the information being requested via CDCR records. Muhammad fails to articulate how Defendant Koenig's responses are deficient and instead merely disagrees with Defendant Koenig's responses, which is insufficient grounds to pursue a motion to compel. *See Asea, Inc.*, 669 F.2d at 1245. Therefore, the Court **DENIES** Muhammad's request for further responses to these RFAs.

## V. CONCLUSION

For the reasons set forth above, the Court orders as follows:

1. Muhammad's motions to compel are **DENIED**. Dkts. 11, 13. Because his motions to compel have been denied, his request for sanctions is also **DENIED**. Dkt. 11.

2. The Court **GRANTS** Muhammad's motion for an extension of time to file his opposition to Defendants' motion for summary judgment. Dkt. 23. No later than **twenty (28) days** from the date of this Order, Muhammad shall file his opposition. Defendants shall file a reply **fourteen (14) days** after the opposition is filed. The motion for summary judgment shall be deemed submitted as of the date the reply brief is due.

3. Future requests for extensions of time must be submitted at least **seven (7) days** prior to the expiration of a deadline, as required by Section D.2 of the Court's Standing Order for Civil Cases.

**IT IS SO ORDERED.**

Dated: August 10, 2026

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**

United States District Court
Northern District of California